IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROGER KENNETH ADAMS, JR., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:10-CV-04226-RWS |
| JPMORGAN CHASE BANK, : | |
| : | |
| Defendant. : | |
| : | |

## **ORDER**

This case comes before the Court on Defendant's Motion to Dismiss or, in the alternative, Motion for a More Definite Statement [2] and Motion to Dismiss Amended Complaint [9]. After considering the record, the Court enters the following Order.

### **Background**

Plaintiff Roger Kenneth Adams ("Plaintiff" or "Adams") executed a promissory note ("Note") and security deed ("Security Deed") in favor of Washington Mutual Bank, FA ("WaMu") for his property located at 2895 Dollar Circle, Suwanee, Georgia 30024 ("Property"). (Dkt. No. [6] at ¶¶ 3–4).

Afterward, Defendant JPMorgan Chase Bank ("Defendant" or "JPMorgan") obtained servicing rights to the Note. (Id. at ¶ 5). In or around October 2008, Adams began to face financial troubles that made it difficult for him to make payments on the Note. (Id. at ¶ 6). Accordingly, he sought and was approved for a Special Forbearance Agreement ("Agreement"), which Adams signed on March 30, 2010. (Id. at ¶ 7).

The Agreement "provide[d] temporary relief from … loan payments." (Dkt. No. [6-1] at 1). Under the Agreement, Adams would make a reduced payment of $687.35 by the first day of each month, from April 2010 to September 2010. (Id. at 2; Dkt. No. [6] at ¶ 8). If all payments were made as scheduled, the Agreement provided that JPMorgan would "reevaluate [Adams's] application for assistance and determine if [JPMorgan] is able to offer [Adams] a permanent workout solution to bring [the] loan current." (Dkt. No. [6-1] at 2). If any payments were not made as scheduled, the Agreement provided that "collection and/or foreclosure activity" would resume. (Id.). After making his first payment in April 2010, Adams continued to make the scheduled payments and did not default on the Agreement's terms. (Dkt. No. [6] at ¶ 12).

2

However, on August 13, 2010, JPMorgan sent Adams a Notice of Foreclosure Sale ("Notice") pursuant to O.C.G.A. § 44-14-162.2. (Id. at ¶ 13). The Notice said foreclosure proceedings had commenced against Adams and that Defendant would auction off the Property on October 5, 2010—after the period of the Agreement would have ended. (Id.). Plaintiff claims Defendant and its agents nevertheless made representations to him throughout September 2010 that options might be available for him to keep his home. (Id. at ¶¶ 15–18). Defendant, however, foreclosed on the Property on October 5, 2010, and sold it at a public auction. (Id. at ¶ 19).

Adams sued JPMorgan in the Superior Court of Gwinnett County on November 8, 2010, alleging breach of contract, wrongful foreclosure, negligence, and fraud in the inducement. (Dkt. No. [1-1] at 3, 5–8). Defendant removed the case to federal court. (Dkt. No. [1] at 1). On January 5, 2011, Defendant filed its Motion to Dismiss or, in the alternative, Motion for a More Definite Statement [2].[1] Plaintiff filed an Amended Complaint for Damages [6] in February 2011, and Defendant filed a Motion Dismiss Amended Complaint [9] on February 28, 2011.

---

[1]Because Plaintiff filed an Amended Complaint for Damages [6], the Court will address only the second motion to dismiss. Defendant's Motion to Dismiss or, in the alternative, Motion for a More Definite Statement [2] is **MOOT**.

3

**Discussion**

**I.     Standards**

   A.     Motion to Dismiss

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the Court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (internal citations omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

   B.     Heightened Pleading Standard for Fraud

Under Federal Rule of Civil Procedure 9(b), "a party [alleging fraud] must state with particularity the circumstances constituting fraud … . Malice, intent, knowledge, and other conditions of a person's mind may be alleged

4

generally." Rule 9(b) is satisfied if a complaint

> sets forth precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud.

In re Theragenics Corp. Sec. Litig., 105 F. Supp. 2d 1342, 1348 (N.D. Ga. 2000) (citing Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

## I.  Merits of the Motions

### A.  The Law of Contracts

Defendant argues that the Agreement cannot be enforced for two reasons: (1) it lacks consideration, and (2) it violates the Statute of Frauds. (Dkt. No. [9-1] at 8–12). Because the Court finds the Agreement lacks consideration and is therefore unenforceable, the Court will not address Defendant's Statute of Frauds argument.

Defendant argues that "Plaintiff's agreement to make [reduced] monthly payments … could not have constituted consideration since [the payments] … represented money Plaintiff already owed on the Note." (Id. at 9). In effect, it argues that there is no "consideration moving to the contract," which all valid contracts require. O.C.G.A. § 13-3-1. Indeed, precedent compels the Court to

5

find an absence of consideration. See, e.g., Dixon v. JPMorgan Chase Bank, No. 1:10-CV-01598-HLM, Dkt. No. [13] at 19-24 (N.D. Ga. Aug. 9, 2010) (finding "an agreement to pay a reduced mortgage amount was not adequate consideration to support a contract to modify the mortgage" because the plaintiff "was already legally obligated to pay the money owed under the mortgage"); Citizens Trust Bank v. White, 618 S.E.2d 9, 11–12 (Ga. Ct. App. 2005) (holding that an agreement to pay $35,000 for the bank to not foreclose on a property was not adequate consideration because it was for "payment of a debt that [the mortgagor] already owed"). "An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another." White, 618 S.E.2d at 11–12 (quoting Owings v. Ga. R.R. Bank & Trust Co., 372 S.E.2d 825, 826 (Ga. Ct. App. 1988)). The Agreement permitted Adams to make reduced payments on money already owed. (Dkt. No. [6] at ¶ 8). Therefore, the Agreement lacks consideration because Plaintiff had an existing legal obligation to comply with the Note's terms.

In his Response [10], however, Adams does not dispute whether there was consideration; instead, he argues that the doctrine of equitable estoppel applies. (Dkt. No. [11] at 5). Specifically, Defendant allegedly made

6

promises—not to foreclose on the Property during the pendency of the Agreement and to reevaluate Adams's application for assistance if he complied with the Agreement—that Plaintiff relied on so as to continue to make payments (whereas he could have continued to miss payments), to not find alternative housing, and to forego other means of saving his home. (Id. at 6–7). Defendant replies that Plaintiff's argument fails because (1) Adams does not show detrimental reliance, and (2) promissory estoppel does not apply to vague, indefinite promises such as the ones in the Agreement. (Dkt. No. [12] at 2–4).

> A successful claim of promissory estoppel requires Plaintiff to establish:
>
> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

Sierra Craft, Inc. v. T.D. Farrell Constr., Inc., 638 S.E.2d 815, 820 (Ga. Ct. App. 2007) (quoting Rental Equip. Grp. Inc v. MACI, LLC, 587 S.E.2d 364, 367 (Ga. Ct. App. 2003)). The doctrine only applies to "promise[s] which the promisor should reasonably expect to induce action or forbearance on the part of the promisee." O.C.G.A. § 13-3-44. Such a promise, however, "must be of such a character as to be capable of enforcement against the party making it, as

7

otherwise neither party will be bound." McMurray v. Bateman, 144 S.E.2d 345, 353 (Ga. 1965) (quoting McCaw Mfg. Co. v. Felder, 41 S.E. 664, 666 (Ga. 1902)).

Plaintiff contends that he reasonably relied on the promises to reevaluate Adams's application for assistance and not to foreclose on the Property. (Dkt. No. [11] at 6). However, the promise to "reevaluate" Adams's application was not a definite promise to save the Plaintiff's home. Rather, Defendant only promised to review the Plaintiff's application–without binding itself to a result. Under these circumstances, the character of the promise is too vague and indefinite to justify reasonable reliance and is therefore unenforceable. See Dixon, No. 1:10-CV-01598-HLM, Dkt. No. [13] at 26–27 (holding an agreement that stipulated it was "only the 'first step' in modifying [a] loan" was "too vague and unenforceable to justify reasonable reliance").

Furthermore, Plaintiff's allegations do not show detrimental reliance. "Detrimental reliance which causes a *substantial change in position* will constitute sufficient consideration to support promissory estoppel." Clark v. Byrd, 564 S.E.2d 742, 745 (Ga. Ct. App. 2002) (emphasis added). Thus, the issue becomes: does making reduced payments on one's mortgage, foregoing other means to save one's home, and not seeking alternative housing constitute

8

a *substantial change* in one's position? The Court holds that it does not. The Agreement allowed Plaintiff to avoid foreclosure and live in his home for several months on reduced payments. (Dkt. No. [6] at ¶ 12). This cannot be considered detrimental because he was bound by the Note to make his payments anyway. Also, by signing the Agreement, nothing prevented Plaintiff from pursuing alternatives for housing or for saving his house. Therefore, Plaintiff cannot invoke the doctrine of equitable estoppel. Defendant's motion to dismiss Adams's breach of contract claim is **GRANTED**.

      B.    <u>Wrongful Foreclosure</u>

In Count Two of the Amended Complaint [6], Plaintiff alleges "Defendant breached the Agreement by initiating and completing foreclosure proceedings," which therefore was a wrongful foreclosure. (Dkt. No. [6] at ¶ 27). JPMorgan sets forth several arguments for why the Court should dismiss this claim: (1) there was no breach because the foreclosure occurred after the forbearance period; (2) there is no binding contract that could be violated; and (3) to the extent Plaintiff relies on alleged oral misrepresentations, the Statute of Frauds, a lack of consideration, and a lack of reasonable reliance make those "agreements" unenforceable. (Dkt. No. [9-1] at 14–16).

9

As already discussed, the Agreement is not a valid contract that the Court can enforce. Because this is the sole basis on which Plaintiff argues he was wrongfully foreclosed, Defendant's motion to dismiss Adams's wrongful foreclosure claim is **GRANTED**.

C.   Negligence

In Count Three of the Amended Complaint [6], Plaintiff claims Defendant was negligent. Specifically, "Defendant explicitly promised to determine if a permanent workout solution to bring Mr. Adams's loan current was available and had a duty to Plaintiff to exercise due care in fulfilling said promise," and "Adams reposed trust and/or confidence in [Defendant] to perform the promise." (Dkt. No. [6] at ¶¶ 31–32). By initiating foreclosure, Plaintiff argues that "Defendant failed to exercise ordinary care in ensuring that the Agreement was honored, and therefore violated the trust and/or confidence reposed in it." (Id. at ¶¶ 33–34).

Defendant dissects the negligence claim into two theories: one that relies on a violation of the Agreement's terms and another that relies on an alleged breach of trust or confidence arising from the Agreement. (Dkt. No. [9-1] at 16–17). For the first theory, JPMorgan argues that "Georgia law is clear that a party cannot base a negligence claim solely on the mere alleged breach of a

10

contractual duty." As to the second theory, it argues that "Georgia law is well-settled that there generally is no confidential relationship between a bank and its customers." (Id. at 18–19). In his Response [11], Plaintiff asks the Court to find an exception to the general rule that no confidential relationship exists between a bank and its customers. (Dkt. No. [11] at 14).

First, the Court finds that Plaintiff's breach of contractual duty theory fails because no contract exists. Assuming the Agreement was a valid contract, Adams's claim for negligence would still fail because "[i]t is well settled that mere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." Guarantee Ins. Co. v. Merchs. Emp'r Benefits, No. 5:07-CV-307 (CAR), 2010 U.S. Dist. LEXIS 103641, at *21 (M.D. Ga. Sept. 30, 2010) (quoting Servicemaster Co. v. Martin, 556 S.E.2d 517, 521 (Ga. Ct. App. 2001)).

Second, the Court does not find a duty of trust or confidence arose from the Agreement. Georgia law states that

> [a]ny relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual

11

confidence, the law requires the utmost good faith, such as the
relationship between partners, principal and agent, etc.

O.C.G.A. § 23-2-58. Furthermore, under Georgia law, "[t]here is no confidential relationship between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past." Russell v. Barnett Banks, Inc., 527 S.E.2d 25, 26 (Ga. Ct. App. 1999). In particular, a court should not find a "confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests." Id. at 26–27. Respectively, Adams and JPMorgan are mortgagor and mortgagee. (Dkt. No. [6] at ¶ 5). No unique facts exist here which would compel the Court to create an exception. Therefore, Defendant's motion to dismiss Plaintiff's negligence claim is **GRANTED**.

    D.    Fraud in the Inducement

In Count Four of the Amended Complaint [6], Plaintiff alleges fraud in the inducement. (Dkt. No. [6] at ¶¶ 36–45). Specifically, Adams relies on the Agreement and oral misrepresentations made by JPMorgan representatives that Defendant would cease all foreclosure action during the pendency of the Agreement. (Id. at ¶¶ 37–39). Plaintiff claims these alleged misrepresentations were made "with the intention to cause Plaintiff to make more payments to

12

Defendant and thereby lessen somewhat the amount of deficiency owed to Defendant," and that "Defendant had no intention of restructuring Plaintiff's loan." (Id. at ¶ 40).

Defendant argues that the Court should dismiss the fraudulent inducement claim because: (1) "Plaintiff failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b)"; (2) Plaintiff "failed to plead facts supporting each of the essential elements of [the] claim," in particular scienter and that there was a false representation; (3) a fraud claim under Georgia law cannot be based on a mere failure to honor contractual promises; and (4) Plaintiff cannot show justifiable reliance, as is required by Georgia law. (Dkt. No. [9-1] at 20–25).

Plaintiff responds that "in the process of attempting to have other counts of Plaintiff's Amended Complaint dismissed, [Defendant] essentially admitted to having actual knowledge that the statements its agents were making and the documents it was furnishing to Adams were, from the Defendant bank's perspective, totally meaningless." (Dkt. No. [11] at 16). As to whether the pleadings satisfy Rule 9(b), Plaintiff argues that the pleadings satisfy an "alternative means" requirement referenced in Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988). (Dkt. No. [11] at 17–18). Furthermore,

13

Adams argues that JPMorgan should not be able to use "its own flawed 'system,'" in which Adams was "never given identifying information about any of [JPMorgan's] telephone representatives beyond those representatives' first names," to avoid liability. (Id. at 18–20).

To survive a motion to dismiss in an action for fraudulent inducement, "a plaintiff must [plead] the following elements: false representation; scienter; intent to induce the plaintiff to act or refrain from acting; justifiable reliance; and damage proximately caused by the representation." Jarallah v. Schoen, 531 S.E.2d 778, 780 (Ga. Ct. App. 2000). As explained below, the Court finds that Plaintiff failed to properly plead the false representation and justifiable reliance elements.

As to whether JPMorgan made a false representation, the Court holds that it did not. If all reduced payments were made as scheduled, the Agreement provided that JPMorgan would "reevaluate [Adams's] application for assistance and determine if [JPMorgan] is able to offer [Adams] a permanent workout solution to bring [the] loan current." (Dkt. No. [6-1] at 2). This promise is vague, and it at most obligated Defendant to make a good faith effort to at least *consider* Adams's application for assistance. Indeed, Plaintiff pled in his Amended Complaint that JPMorgan requested documents from him so that

14

Defendant's representatives could review them and consider all options for Adams to keep his home. (Dkt. No. [6] at ¶ 11). Therefore—ignoring that the Agreement is an illusory contract—Defendant abided by the Agreement's terms, so no false representation was made. As discussed below, even if customer representatives made false representations to Adams that JPMorgan would not foreclose on the Property, Adams was not justified in relying on these representations.

To establish justifiable reliance, "it is not sufficient to show that false representations were knowingly made with an intent to deceive." Todd v. Martinez Paint & Body, Inc., 517 S.E.2d 844, 846 (Ga. Ct. App. 1999). Plaintiff must also show that he acted with "due care" to discover the fraud. Id. "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence." Id. (quoting Charter Med. Mgmt. Co. v. Ware Manor, Inc., 283 S.E.2d 330, 333 (Ga. Ct. App. 1981)). Furthermore, "a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, representations of this nature must be inquired into and examined to ascertain the truth." Id. (citing Wilkinson v. Walker, 240 S.E.2d 210, 211 (Ga. Ct. App. 1977)). Although Adams claims

15

he relied on "numerous statements and assurances made by various representatives at [JPMorgan], [who made him] believe[] … all foreclosure activity against him ceased," the proper persons to contact in regard to the foreclosure would have been those that sent him the Notice, Defendant's attorneys at McCurdy & Candler, LLC. (Dkt. No. [6] at ¶¶ 13, 16–18). Reliance on the hopeful representations of customer representatives while receiving legal notices of foreclosure is not an exercise of due care. Also, "under Georgia law a fraud claim cannot, as a matter of law, be founded on a promise that fails to satisfy the statute of frauds." Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc., 826 F. Supp. 460, 466 (N.D. Ga. 1993). Therefore, Adams cannot show justifiable reliance on the alleged oral representations.

Because the Court finds Plaintiff fails to meet two elements of his fraudulent inducement claim, whether other elements are satisfied need not be considered. Defendant's motion to dismiss Plaintiff's fraud in the inducement claim is **GRANTED**.

## Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss Amended Complaint [9] is **GRANTED**, and Defendant's Motion to Dismiss or,

AO 72A
(Rev.8/82)

in the alternative, Motion for a More Definite Statement [2] is **MOOT**. The Clerk is directed to close this case.

    **SO ORDERED**, this  24th  day of June, 2011.

                                                      _____
                                                      RICHARD W. STORY
                                                      UNITED STATES DISTRICT JUDGE